**Below is a Memorandum Decision of the Court.**

*Mary Jo Heston*
**Mary Jo Heston**
**U.S. Bankruptcy Judge**
(Dated as of Entered on Docket date above)

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br>BERNICE GORKIN,<br>                 Debtor. | Case No. 23-41888-MJH |
| 1ST RATE CONSTRUCTION and DRAIN WIZARD INC. and FREDERICK ARDRY,<br>                 Plaintiffs<br>v.<br>BERNICE GORKIN,<br>                 Defendant | Adversary No. 24-04011-MJH<br><br>**MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

This matter came before the Court on April 11, 2024, on a motion for summary judgment filed on March 3, 2024, by Defendant Bernice Gorkin ("Ms. Gorkin") in the above-referenced proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056[1] ("Motion"). Plaintiffs 1st Rate Construction and Drain Wizard Inc. and Frederick Ardry, president of 1st Rate Construction and Drain Wizard Inc. (collectively "1st Rate"), oppose

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Federal Bankruptcy Code, 11 U.S.C. § 101–1532, and to the Federal Rules of Bankruptcy Procedure, 1001–9037.

MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 1

the Motion. The Court, having considered the arguments of counsel and the record for the Motion as set forth below, states its opinion as follows:

## I. PROCEDURAL HISTORY

On January 16, 2024, 1st Rate filed this adversary proceeding. Pls.' Compl., ECF No. 1. The complaint alleges nondischargeability pursuant to 11 U.S.C. § 523(a)(2), (a)(4), and (a)(6), related to unpaid damages arising from a judgment adverse to Gorkin, entered by Pierce County Superior Court ("Superior Court"). Pls.' Compl., ¶¶ 4.1-4.20.[2] On February 5, 2024, Ms. Gorkin filed a pro se response to adversary summons, which appears to be an unverified statement of facts from Ms. Gorkin's perspective. Def.'s Stmt., ECF No. 4. On February 8, 2024, Ms. Gorkin filed a second pro se response to the adversary summons, identical to the first. Def.'s Second Stmt., ECF No. 6. On February 26, 2024, Ms. Gorkin, through her counsel, filed an amended answer to the Complaint. Def.'s Am. Answer, ECF No. 11.

On March 4, 2024, Ms. Gorkin filed this Motion. Def.'s Mot. Summ. J., ECF No. 12. On March 5, 2024, Ms. Gorkin filed a declaration in support of the Motion. Def.'s Decl., ECF No. 13. The declaration was supported by the following: (1) copies of the original contracts between the parties, (2) a declaration of Frederick Ardy from the Superior Court case, (3) a copy of the Superior Court's judgment against Ms. Gorkin ("Judgment"), (4) 1st Rate's plead counterclaims in the Superior Court case, and (5) a copy of the Superior Court case's docket.

On April 3, 2024, 1st Rate filed a response to the Motion. Pls.' Resp. Mot. Summ. J., ECF No. 17. 1st Rate included the following in support of its response: (1) a declaration of Mark Lawless of Construction Systems Management Inc. containing his credentials and report concerning the Superior Court Case; (2) the complaint filed by Ms. Gorkin to the

---

[2] Although the complaint alleges § 523(a)(4) as a basis for nondischargeability in the caption, there is no cause of action pleaded in the complaint, nor are there any facts in support of nondischargeability under § 523(a)4). Accordingly, the Court infers that this is a typographical error by the Plaintiffs.

MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 2

Attorney General of Washington; (3) portions of statements made by Ms. Gorkin at a deposition on November 17, 2022; (4) Ms. Gorkin's answer to prior interrogatories; (5) photographs of septic; (6) property records of the property; (7) statements made by Ms. Gorkin in a prior declaration; and (8) a prior motion and order to which Ms. Gorkin was a party in a separate case. Pls.' Resp. Mot. Summ. J., ECF No. 17-1-17-9. On April 4, 2024, Ms. Gorkin filed her reply in support of the summary judgment. Def.'s Reply, ECF No. 18.

On April 11, 2024, the Court held a hearing on the Motion. At the hearing, the Court heard oral arguments from counsel and informed 1st Rate's counsel that the declaration of counsel supporting 1st Rate's response to summary judgment was unsigned. The Court ordered 1st Rate's counsel to file an amended response with a signed declaration and took the Motion under advisement. On April 11, 2024, 1st Rate's counsel filed the amended response. Pls.' Am. Resp. Mot. Summ J., ECF No. 23. Accordingly, the Motion is now properly before the Court.

## II. FACTUAL BACKGROUND

The facts set forth in this section are undisputed by the parties.

**A. THE REFINANCE AND RESIDENTIAL CONSTRUCTION CONTRACTS.**

In early April 2021, Ms. Gorkin refinanced her residence at 1816 6th Street S.W., Puyallup, WA 98371 ("Residence"). Def.'s Decl., 1:18-1:19. She captured approximately $40,000 in equity from the refinance to improve the Residence. Def.'s Decl., 1:18-1:19; Pls.' Am. Resp. Mot. Summ J. 7:12.

On or about April 22, 2021, Ms. Gorkin entered into two residential construction contracts with 1st Rate concerning Ms. Gorkin's Residence ("Contracts"). Def.'s Decl., Ex. A, B; Pls.' Am. Resp. Mot. Summ. J., 3:9-3:14. The Contracts contemplated constructing and rehabilitating Ms. Gorkin's 1.5 bathrooms and repairing improper drainage and toilets. Pls.' Am. Resp. Mot. Summ. J., 3:9-3:14; Def.'s Decl., 1:23-1:25. Before entering into the Contracts, 1st Rate provided an estimate for Contract A1 for $12,930.00 and Contract A2 for $5,795.00, collectively $18,725.00. Def.'s Decl., 2:1-2:2, Ex. A; Pls.' Am.

MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 3
Case 24-04011-MJH    Doc 27    Filed 04/17/24    Ent. 04/17/24 16:18:49    Pg. 3 of 15

Resp. Mot. Summ. J., 3:15-3:16; Pls.' Resp. Mot. Summ. J. Ex. 1. Ms. Gorkin paid $11,691.00 as an initial down payment. Pls.' Am. Resp. Mot. Summ. J., 3:16-3:17; Def.'s Decl., 2:12-2:14, Ex. B.

After work began on the Residence, a disagreement arose between the parties concerning whether Ms. Gorkin verbally approved additional work beyond the scope of the bathrooms referenced in the Contracts. Def.'s Decl., 2:9-2:14, Ex. B; Pls.' Am. Resp. Mot. Summ. J., 3:15-4:4. The parties had further disagreements concerning the quality and extent of work completed. Ms. Gorkin ultimately terminated 1st Rate by August 2021. Pls.' Am. Resp. Mot. Summ. J., 3:17-3:18; Def.'s Decl., 2:9-2:11. At the time of termination, 1st Rate asserted that Ms. Gorkin owed an amended balance of $29,040.68 after completing the additional work. Pls.' Am. Resp. Mot. Summ. J., 3:17-3:18; Def.'s Decl., 2:9-2:11.

### B. THE SUPERIOR COURT CASE AND JUDGMENT

On November 11, 2021, Ms. Gorkin filed the Superior Court case against 1st Rate. Def.'s Decl., Ex. E. On September 15, 2021, after nearly two years of contested litigation, the Superior Court entered a judgment in favor of 1st Rate for approximately $66,140.20[3] *plus* post-judgment interest accruing at 12% per annum. Def.'s Decl., Ex. C; Pls.' Compl., 3:6-3:7. The Superior Court judgment based its judgment on 1st Rate's counterclaims for breach of contract, unjust enrichment, and quantum meruit. Def.'s Decl., Ex. D.

### C. THE BANKRUPTCY FILING

On October 30, 2023, shortly after the Superior Court entered its judgment, Ms. Gorkin filed for chapter 7 relief. Bankr. Case No. 23-41888-MJH, ECF No. 1. Ms. Gorkin scheduled the Residence with an alleged value of $493,800.00, subject to a mortgage held by Chase Mortgage in the amount of $205,048.00. Bankr. Case No. 23-41888-MJH, ECF

---

[3] The Court notes that there are crossed-out amounts on the judgments and corrections to the judgment amount. The Court notes, however, that the corrected amounts on the judgment match 1st Rate's alleged amount.

No. 1 at 15. Ms. Gorkin asserts that the value of the home has remained the same since the time of filing but that the mortgage is now $197,076.12, presumably due to monthly payments by Ms. Gorkin. Def.'s Decl., 1:21-1:22. On November 29, 2023, the chapter 7 trustee filed a report of no distribution. On January 16, 2024, 1st Rate timely filed this adversary proceeding. On March 14, 2024, the Court entered an Order of Discharge, Bankr. Case No. 23-41888-MJH, ECF No. 10, and closed the main bankruptcy case on March 18, 2024.

### III. DISCUSSION

#### A. JURISDICTION

This Court has jurisdiction over the Motion and adversary proceeding under 28 U.S.C. § 1334(b), and the Motion and adversary proceeding is a core matter pursuant to 28 U.S.C. § 157(b)(2)(I). Bankruptcy courts have exclusive jurisdiction over nondischargeability actions brought pursuant to § 523(a)(2) and (a)(6). *See In re Goscicki*, 207 B.R. 893, 897–98 (9th Cir. BAP 1997); *In re Aldrich*, 34 B.R. 776, 779–80 (9th Cir. BAP 1983).

#### B. SUMMARY JUDGMENT STANDARD

The party seeking summary judgment bears the burden of demonstrating that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), made applicable by Fed. R. Bankr. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). All inferences drawn from the evidence presented must be drawn in favor of the party opposing summary judgment, and all evidence must be viewed in the light most favorable to that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment should be granted if, after taking all reasonable inferences in the nonmoving party's favor, the court finds that no reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 255 (1986). The responding party may not rest upon mere allegations or denials of their pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 256.

As the moving party, Ms. Gorkin bears the burden of establishing that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law on the nondischargeability claims. All inferences from the evidence presented are drawn in the light most favorable to the 1st Rate. If Ms. Gorkin establishes that one element of 1st Rate's claims for relief are not met, she is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322–23 (the nonmoving party who bears the burden of proof at trial must make a "sufficient showing" that he can establish each element of his case at trial).

## C. Nondischargeable Debts Under § 523

One of the fundamental policies of the Bankruptcy Code is the fresh start afforded debtors through the discharge of their debts. *In re Devers*, 759 F.2d 751, 754–55 (9th Cir.1985). To effectuate the fresh start policy, exceptions to discharge should be strictly construed against an objecting creditor and in favor of the debtor. *In re Klapp*, 706 F.2d 998, 999 (9th Cir.1983). Furthermore, a party objecting to the dischargeability of a specific debt bears the burden of proof for each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

### 1. Nondischargeable Debts Under § 523(a)(2).

Under § 523(a)(2), there are two circumstances in which a debt is nondischargeable. First, under § 523(a)(2)(A), a debt for money or property is not dischargeable if it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition." The creditor must prove:

> (1) that false representations were made.
> (2) that at the time made, the representations were known to be false.
> (3) that the representations were made with the intention and purpose of deceiving the creditor.
> (4) that the creditor relied on such representations; [and]
> (5) that the creditor sustained the alleged loss and damage as the proximate result of such misrepresentations.

MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 6

Case 24-04011-MJH    Doc 27    Filed 04/17/24    Ent. 04/17/24 16:18:49    Pg. 6 of 15

*See In re Sabban*, 600 F.3d 1219, 1222 (9th Cir. 2010) (quoting *Am. Express Travel Related Servs. Co. v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1125 (9th Cir. 1996)).

Second, § 523(a)(2)(B) prohibits a discharge where a money or property debt was explicitly obtained by using a false written statement of the debtor's or an insider's financial condition. The creditor must prove: (1) the debtor made a written representation of fact concerning the debtor's or an insider's financial condition; (2) that was material; (3) that the debtor knew at the time to be false; (4) that the debtor made with intent to deceive the creditor; (5) upon which the creditor relied; (6) that the creditor's reliance was reasonable; and (7) that damage proximately resulted from the representation. *In re Candland*, 90 F.3d 1466, 1469 (9th Cir.1996).

The term "financial condition," as used in § 523(a)(2)(B), means one's overall financial status. *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 716 (2018). For example, even a statement concerning a single asset can be a statement respecting the debtor's financial condition. *Id*. If such a statement is not in writing, the associated debt may be discharged, even if the statement was false. *Id*. Additionally, § 523(a)(2)(B) requires a creditor to show reasonable reliance, a more rigorous, objective standard than "justifiable reliance" required under § 523(a)(2)(A), which takes into account the subjective and specific aspects of a party's circumstances. *Field v. Mans*, 516 U.S. 59, 61 (1995).

It is well established that the subsections of § 523(a)(2)(A) and (B) are mutually exclusive. *See In re Barrack*, 217 B.R. 598, 605 (9th Cir. BAP 1998); H.R. REP. 95-595, 549, 1978 U.S.C.C.A.N. 5963, 6453 ("Subparagraph (A) is mutually exclusive from subparagraph (B)."). Section 523(a)(2)(B) expressly deals with fraudulent misrepresentations respecting a debtor's financial condition. It adds the requirement that such misrepresentations be in writing. *Barrack*, 217 B.R. at 605. The provision also acts as an evidentiary protection for a debtor because it requires the creditor to prove fraud based on misrepresentations of financial condition using the more objective reasonable reliance standard. *See Field*, 516 U.S. at 72–77. Conversely, § 523(a)(2)(A) false pretenses,

a false representation, or actual fraud are common-law terms, and their elements are so defined, including a requisite reliance that is only justifiable. *Id*. Accordingly, any allegation of fraudulent misrepresentation concerning a debtor's financial condition may only be pled under § 523(a)(2)(B). *Barrack*, 217 B.R. at 605. (citing *In re County of Orange*, 179 B.R. 185, 190 (Bankr. C.D.Cal.1995)).

### 2. Nondischargeable Debts Under § 523(a)(6).

Section 523(a)(6) excepts from discharge debts resulting from "willful and malicious injury by the debtor to another entity or to the property of another entity." Section 523(a)(6) generally applies to individual torts rather than breaches of contract. *Lockerby v. Sierra*, 535 F.3d 1038, 1040 (9th Cir. 2008). Negligent or reckless acts do not suffice to establish that a resulting injury is willful and malicious, and debts arising from recklessly or negligently inflicted injuries are not excepted from discharge under § 523(a)(6). *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998).

It is settled in the Ninth Circuit that "a simple breach of contract is not the type of injury addressed by § 523(a)(6)." *In re Riso*, 978 F.2d 1151, 1154 (9th Cir. 1992). Furthermore, an intentional breach of contract is excepted from discharge under § 523(a)(6) only when it is accompanied by malicious and willful tortious conduct. *Id*. Thus, a "breach of contract must be accompanied by some form of 'tortious conduct' that gives rise to 'willful and malicious injury.'" *In re Jercich*, 238 F.3d 1202, 1206 (9th Cir. 2001).

In the Ninth Circuit, tortious conduct giving rise to § 523(a)(6) nondischargeability must arise out of a viable tort claim under state law. *Lockerby*, 535 F.3d at 1042. The *Lockerby* court explained its reasoning by stating that "[expanding] the scope of § 523(a)(6) to include contracts that are intentionally breached whenever it is substantially certain that injury will occur would severely circumscribe the ability of debtors to 'start afresh.'" *Id*. In sum, in the Ninth Circuit, an intentional breach of contract absent a viable state law tort claim is insufficient to support a claim under § 523(a)(6).

MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 8
Case 24-04011-MJH    Doc 27    Filed 04/17/24    Ent. 04/17/24 16:18:49    Pg. 8 of 15

### D. SUMMARY JUDGMENT CONCERNING ANY § 523(A)(2) CLAIM

1st Rate's complaint does not specifically allege a nondischargeable claim under either § 523(a)(2)(A) or (a)(2)(B). Rather, it alleges nondischargeability under § 523(a) broadly. Further, 1st Rate's complaint alleges factual elements applicable under both § 523(a)(2)(A) and (a)(2)(B). At summary judgment, the court looks at the record in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587. Accordingly, the Court, for the purposes of this Motion, presumes that 1st Rate seeks a determination of nondischargeability under both § 523(a)(2)(A) and (B).

1st Rate asserts that Ms. Gorkin misrepresented her intent to pay for some of the work, including the latent defects not contemplated in the Contracts, which inevitably increased the remodeling costs, and further that Ms. Gorkin misrepresented her financial condition. Specifically, it alleges that she had the ability to pay for the contracted work at the time the parties entered the agreement. Pls.' Am. Resp. Mot. Summ. J., 7:11-7:13, 8:16-8:18. Finally, 1st Rate alleges that notwithstanding Ms. Gorkin's financial condition, she misrepresented that she intended to pay for the work at the time of contracting. Pls.' Am. Resp. Mot. Summ. J., 7:24, 8:8, 9:1-9:4. Conversely, Ms. Gorkin argues as a threshold matter that 1st Rate is precluded from asserting that its Judgment is nondischargeable under either theory of § 523(a)(2) because of res judicata. Ms. Gorkin also argues that any claim based on reliance upon Ms. Gorkin's financial condition fails as a matter of law because 1st Rate did not rely on any writing concerning her financial condition. Finally, Ms. Gorkin asserts that 1st Rate's assertion does not raise a genuine issue of material fact because a rational fact finder could not find that Ms. Gorkin did not intend to pay for the full contracted amount in April 2021.

**1. Claim Preclusion is Inapplicable to the Nondischargeability Determination.**

Collateral estoppel principles apply in nondischargeability proceedings under the Code. *Garner*, 498 U.S. at 284. Res judicata, or claim preclusion, provides that a final

judgment on the merits of an action precludes the parties from relitigating all issues connected with the action that were or could have been raised in that action." *Rein v. Providian Fin'l Corp.*, 270 F.3d 895, 898–99 (9th Cir.2001). Claim preclusion applies where "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the same claim or cause of action was involved in both suits." *Id.* (citing *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir.2001)). Nondischargeability claims, however, are entirely separate determinations with their own elements under the Code, which require more than establishing liability. Therefore, res judicata does not apply when the prior court does not determine whether a claim is dischargeable. *In re Berr*, 172 B.R. 299, 305 (9th Cir. BAP 1994). Conversely, collateral estoppel, or issue preclusion, does apply to individual fact determinations made by the prior court that were actually litigated. *Id.*

Here, the parties do not dispute that the Superior Court did not determine whether the debt was nondischargeable. Indeed, the Superior Court could not make such a determination. *Rein*, 270 F.3d at 904 (9th Cir. 2001) (holding that bankruptcy courts have exclusive jurisdiction over nondischargeability actions under § 523(a)(2), (4), (6), and (15)). Accordingly, the Court finds that the Superior Court Judgment does not preclude 1st Rate from pursuing a nondischargeability claim.

### 2. Any § 523(a)(2)(B) Claim Fails as a Matter of Law.

The complaint necessarily fails under § 523(a)(2)(B). First, Ms. Gorkin asserts that she did not provide 1st Rate with any writing pertaining to her financial condition, upon which 1st Rate could have reasonably relied. Def.'s Decl., 1:23-1:25. According to the record before the Court, 1st Rate concedes this point in its response to this Motion. Pls.' Am. Resp. Mot. Summ. J., 8:14-8:22. The Court notes, however, that this is inconsistent with 1st Rate's complaint. Indeed, it states the opposite. Paragraphs 4.8 through 4.11 of the complaint clearly state that Ms. Gorkin failed to disclose material information about

her financial condition without stating what she did disclose that 1st Rate could have reasonably relied upon. Pls.' Compl., 4:23-5:13. Regardless, absent a writing, 1st Rate cannot succeed under § 523(a)(2)(B) as a matter of law, even if it reasonably relied on an oral or inferred material misrepresentation by Ms. Gorkin. The Court finds that to the extent that 1st Rate seeks a determination of nondischargeability under § 523(a)(2)(B), such claim necessarily fails, regardless of 1st Rate's reliance.

### 3. A Genuine Dispute of Material Fact Exists Concerning a Claim Under § 523(a)(2)(A).

1st Rate's complaint does allege that Ms. Gorkin made other misrepresentations that do not require writing. Moreover, 1st Rate alleges that Ms. Gorkin did not intend to pay the full amount owed to 1st Rate despite having the ability to do so. Specifically, Paragraphs 4.3 and 4.6 of the complaint allege that Ms. Gorkin made representations regarding her intent to perform under the Contracts. Pls.' Compl., 4:5-4:22. Furthermore, 1st Rate's response to the Motion appears to narrow the claim to a § 523(a)(2)(A) claim by stating its allegation is that Ms. Gorkin "had the ability to pay and intentionally did not pay." Pls.' Am. Resp. Mot. Summ. J., 7:21-8:22. Additionally, 1st Rate asserts that Ms. Gorkin hid latent defects from 1st Rate at the time of contracting, which she knew or should have known were not contemplated in the original Contracts, to induce 1st Rate to expand its work on the Residence, then created a dispute over additional work, and finally not pay for the work in excess of her initial down payment. Pls.' Am. Resp. Mot. Summ. J., 8:23-9:5.

The Court does not weigh credibility but plausibility and sufficiency at summary judgment. The Court must view the arguments in the light most favorable to the nonmoving party, drawing all inferences in 1st Rate's favor. *See Liberty Lobby*, Inc., 477 U.S. at 255. 1st Rate asserts that Ms. Gorkin induced it to contract with her knowing of latent defects and never intended to pay the full amount of the Contract, let alone the extra work that 1st Rate completed. The alleged facts raised by 1st Rate present such a

genuine issue in material fact, which renders summary judgment concerning any claim under § 523(a)(2)(a) improper. Accordingly, a genuine issue of material fact exists concerning a claim under § 523(a)(2)(A).

### E. SUMMARY JUDGMENT CONCERNING THE § 523(A)(6) CLAIM

**1. 1st Rate's Claim, as Pleaded in Its Complaint, Fails as a Matter of Law.**

In its complaint, 1st Rate asserts substantially the same factual basis as its § 523(a)(2) claim. Specifically, Paragraphs 4.15 through 4.18 allege the same facts that give rise to its claims under § 523(a)(2). Pls.' Compl., 5-6:18. This, however, is insufficient to support a § 523(a)(6) claim as a matter of law if 1st Rate intends to seek judgment on this basis. Although not necessarily mutually exclusive, courts preserve the elements of nondischargeability in other, more specific subsections of section 523(a) to prevent section 523(a)(6) from rendering superfluous those other subsections. For example, courts routinely hold that § 523(a)(6) cannot be used to circumvent § 523(a)(2)(B)'s writing requirement. *See Spencer v. Bogdanovich* (*In re Bogdanovich*), 292 F.3d 104, 114–15 (2d Cir. 2002); *McCrary v. Barrack* (*In re Barrack*), 217 B.R. 598, 606 (9th Cir. BAP 1998); *Jefferey M. Goldberg & Assoc. v. Holstein* (*In re Holstein*), 272 B.R. 463, 482 (Bankr. N.D. Ill.2001); *Weiss v. Alicea* (*In re Alicea*), 230 B.R. 492, 508 (Bankr. S.D.N.Y. 1999); *In re Gulevsky*, 362 F.3d 961, 964 (7th Cir. 2004). Therefore, if a claim fails under § 523(a)(2)(B), it necessarily fails under § 523(a)(6) as a matter of law if it is based on the same factual predicate.

The Court notes that 1st Rate did not plead tortious conduct in Superior Court. 1st Rate's Judgment results from a breach of contract, quantum meruit, and unjust enrichment. Nothing in the complaint alleges recovery under state tort law, let alone malicious and willful tortious conduct. 1st Rate certainly could have pleaded such conduct arising out of the breach of contract when it filed its counterclaims in Superior Court but did not. As such, with respect to the facts alleged in the complaint, Ms. Gorkin is entitled to summary judgment as a matter of law.

## 2. 1st Rate's New Facts Alleged in its Response to Summary Judgment Could Give Rise to a Viable § 523(a)(6) Claim.

1st Rate's response to the Motion does allege new facts that could lead to a nondischargeable claim under § 523(a)(6). See *In re Sangha*, 644 B.R. 843, 875 (Bankr. C.D. Cal. 2022); *In re Sicroff*, 401 F.3d 1101, 1107 (9th Cir. 2005). 1st Rate's response asserts that Ms. Gorkin defamed 1st Rate in her letter to the Attorney General, "claiming that she would ruin the plaintiff's life and bankrupt him" and making false statements to the Washington Department of Labor and Industries to harm 1st Rate. Pls.' Am. Resp. Mot. Summ. J., 5:4-7:20. The Court concludes that 1st Rate's response references the intentional tort of defamation under Washington state law to which § 523(a)(6) nondischargeability may attach. However, to succeed, 1st Rate would have to prove each element of such a claim, including any damages proximately caused by such tortious conduct. 1st Rate cannot import its Superior Court Judgment to a claim under § 523(a)(6) because it arises from separate and distinct facts and circumstances.

## 3. 1st Rate Must Amend its Complaint to Proceed Under a New Theory for § 523(a)(6) Nondischargeability.

In its response to summary judgment, 1st Rate has made allegations that may support a cause of action under state tort law. This Court notes that it may construe new arguments at the summary judgment stage as a request by the party to amend its pleading. *See* Fed. R. Civ. P. 8(e) ("[p]leadings must be construed so as to do justice."); Fed. Bankr. R. 7015(b). *See also Apache Survival Coalition v. United States*, 21 F.3d 895, 910 (9th Cir. 1994) (when the parties raise issues at summary judgment that are outside the scope of the complaint, courts construe this as a request to amend the pleadings out of time pursuant to FRCP 15). *See also* Fed R. Civ. P. 15. ("a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.") However, the Court declines to do so for two reasons.

First, a procedural issue prevents the Court from recognizing 1st Rate's response as a formal request to amend its complaint. The complaint deadline, fixed by the Court in accordance with Rule 4007(c) in the underlying bankruptcy case, expired on January 29, 2024, thirteen days after 1st Rate filed this adversary proceeding. Rule 4007(c) does not apply to bar amended complaints if the amendments relate back to the timely filed original complaint under Fed R. Civ. P. 15(c). *In re Gantes*, 2016 WL 1169124, at *5 (9th Cir. BAP 2016). In the bankruptcy context, Rule 7015, incorporating Fed R. Civ. P. 15(c), provides that when the amended claim for relief or defense arises out of the "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading[,]" it relates back to the date of the original pleading. *See In re Englander*, 92 B.R. 425, 427 (9th Cir. BAP 1988). *See also In re Dean*, 11 B.R. 542, 545 (9th Cir. BAP 1981) (holding that an amended claim will relate back if "the specified conduct of the defendant, upon which the plaintiff is relying to enforce his amended claim, is identifiable with the original claim.").

Second, To provide adequate notice to Ms. Gorkin and her counsel for trial, 1st Rate must identify the specific state law tort or torts it alleges and all elements of such torts. Therefore, the Court concludes that 1st Rate must file a formal motion requesting permission from the Court to amend its complaint in accordance with Fed. R. Civ. P 15(a) and this order to proceed under its new theory under § 523(a)(6) and establish why its amendment relates back to its original complaint in accordance with Fed. R. Civ. P 15(c).

## IV. CONCLUSION

The Court finds that 1st Rate has demonstrated that material issues of genuine fact exist concerning any § 523(a)(2)(A) claim. Accordingly, the Court denies Ms. Gorkin's Motion concerning the § 523(a)(2)(A) claim.

The Court finds that Ms. Gorkin is entitled to summary judgment as a matter of law concerning any § 523(a)(2)(B) claim because 1st Rate has not established that it relied on any written statements pertaining to Ms. Gorkin's financial condition that were

materially false. Furthermore, the Court finds that Ms. Gorkin is entitled to summary judgment as a matter of law concerning the § 523(a)(6) claim, as currently alleged in 1st Rate's filed complaint. Accordingly, the Court grants Ms. Gorkin's Motion concerning the § 523(a)(2)(B) and (a)(6) claim.

The Court shall enter an order in accordance with and incorporating this memorandum decision.

/ / / End of Memorandum Decision / / /